UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------x
FRESH DEL MONTE PRODUCE INC.,                 :
                                              :
                                              :    15 Civ. 6820 (JSR)
        Plaintiff,                            :
                                              :    OPINION AND ORDER
        -v-                                   :
                                              :
DEL MONTE FOODS, INC.,                        :
                                              :
        Defendant.                            :
----------------------------------------x

JED S. RAKOFF, U.S.D.J.

    This case presents the question of whether a United States
court may apply the Lanham Act extraterritorially to hold that
presumptively valid *foreign* trademarks have been abandoned by the
rights holder. If the fundamental principle of U.S. law that a
country's trademarks are a function of that country's laws is to
mean anything, the answer must be no. Accordingly, this Court, by
bottom-line order dated November 3, 2015, granted the motion to
dismiss of defendant Del Monte Foods, Inc. ("Del Monte") in its
entirety. This Opinion and Order explains the reasons for that
ruling and directs the entry of final judgment.

    Plaintiff Fresh Del Monte Produce Inc. ("Fresh"), a Cayman
Islands Corporation, is a vertically-integrated producer, marketer
and distributor of fresh fruits and vegetables across the world,
including in Europe, Africa, and the Middle East (the "EAME
Region"). *See* Complaint for Declaratory Relief ("Compl.") ¶ 11, ECF
No. 1. Defendant Del Monte, a Delaware corporation with its

1

principal place of business in California, produces and distributes processed fruits and vegetable products in the United States. *Id.* ¶ 13.

Prior to 1989, defendant's predecessor in interest, Del Monte Corporation, had two major divisions -- one responsible for canned fruits, vegetables, and dried fruits, and the other for fresh fruits and produce. In 1989, the fresh fruits and produce division was spun off and ultimately became plaintiff. *Id.* ¶ 15. Pursuant to a license agreement entered into in December 1989, Fresh has the exclusive, perpetual, royalty-free right to use the Del Monte name and related trademarks throughout the world in connection with the production, manufacture, and sale of fresh fruit, vegetables, and produce, as well as in connection with certain frozen and other non-fresh products. *Id.* ¶ 16. Del Monte retains only nominal ownership of its marks and the right to use them on certain non-fresh products in the United States and South America. *Id.* ¶ 18. In addition, Fresh's subsidiaries have the perpetual, exclusive, and royalty-free right to use in the EAME Region the Del Monte marks (the "Marks") in connection with *all* food and beverage products, fresh or otherwise. *Id.* ¶ 19.

In its Complaint, Fresh alleges that "[o]ver the past decade, [Del Monte] has taken virtually no steps to exercise supervision or control over the Products[1] manufactured, marketed, and sold [by

---

[1] The Complaint defines "Products" as "all food and beverage products in the EAME Region." Compl. ¶ 2.

plaintiff] under" the Marks. *Id.* ¶ 21. During this period, according to the Complaint, Del Monte has not conducted (nor requested) a single inspection of any Fresh facility that manufactures products sold under the Marks, and it has requested samples of the products sold under the Marks just once, in 2008. *Id.* Meanwhile, Fresh has exercised and continues to exercise "systematic supervision and control" over all of the products it manufactures and sells under the Marks, engaging in regular safety and quality audits. *Id.* ¶¶ 22-27.

On the basis of the foregoing allegations, Fresh, on August 27, 2015, filed this action under the Lanham Act, seeking a declaratory judgment that (1) Del Monte's ownership interest in the Marks has been abandoned and is extinguished, and that (2) such ownership rights belong to Fresh.[2] *Id.* ¶ 42. Fresh further requested that the Court order Del Monte to assign the hundreds of foreign trademark registrations at issue to Fresh. Del Monte subsequently moved to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief can be granted.

On a Rule 12(b)(6) motion to dismiss, the Court accepts all factual allegations in the complaint as true and draws all

---

[2] Under the Lanham Act, "a mark shall be deemed to be 'abandoned' if . . . its use has been discontinued with intent not to resume such use. . . . Nonuse for 3 consecutive years shall be prima facie evidence of abandonment. 'Use' of a mark means the bona fide use of such mark made in the ordinary course of trade, and not made merely to reserve a right in a mark." 15 U.S.C. § 1127.

reasonable inferences in favor of the non-moving party. *See Goldstein v. Pataki*, 516 F.3d 50, 56 (2d Cir. 2008). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

The parties do not dispute that in certain circumstances the Lanham Act may have extraterritorial application. Indeed, even in the Supreme Court's recent decision in *Morrison v. National Australia Bank Ltd.*, 561 U.S. 247 (2010) -- where the Court revitalized the general presumption against extraterritorial application of U.S. law except where Congress has expressly decreed otherwise -- the Court distinguished its earlier, arguably contrary ruling in *Steele v. Bulova Watch Co.*, 344 U.S. 280 (1952) by noting that "we have since read [*Steele*] as interpreting the statute at issue -- the Lanham Act -- to have extraterritorial effect." *Morrison*, 561 U.S. at 271 n.11 (citing *EEOC v. Arabian American Oil Co.*, 499 U.S. 244, 252 (1991) (quoting 15 U.S.C. § 1127)). But it does not follow that, just because Congress has authorized extraterritorial application of the Lanham Act as a general matter, that Act can be applied extraterritorially to determine the validity of trademarks that are wholly the creation of foreign law.

Here, the Court concludes, as a matter of law, that the Lanham Act may not be applied extraterritorially to adjudicate the validity

or ownership status of foreign trademarks.[3] This is because it is
firmly settled that "[a] trademark has a separate legal existence
under each country's laws, and *trademark rights exist in each
country solely according to that nation's laws.*" *Topps Co. v.
Cadbury Stani S.A.I.C.*, 526 F.3d 63, 70 (2d Cir. 2008) (emphasis
added). Consistent with that principle, courts in this Circuit have
repeatedly held that determination of the validity of foreign
trademarks in their foreign applications is not just a matter of
choice of law but that, rather, United States courts are simply not
in the business of adjudicating foreign trademark rights in such
circumstances. *See, e.g.*, *Juicy Couture, Inc. v. Bella Int'l Ltd.*,
930 F. Supp. 2d 489, 506 (S.D.N.Y. 2013) ("The Lanham Act should not
be applied extraterritorially against defendants 'acting under
presumably valid trade-marks in a foreign country.'" (quoting *Vanity
Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 643 (2d Cir.
1956))). Indeed, in *Vanity Fair* itself (*see* footnote 3, *supra*),
where "the crucial issue . . . [was] the validity of defendant's
Canadian trade-mark registration under Canadian trade-mark law," 234
F.2d at 646, the Second Circuit upheld the district court's refusal,
on forum non conveniens grounds, to entertain plaintiffs' trademark

---

[3] Because the Court reaches this conclusion across the board and as a
matter of law, it need not balance the so-called "*Vanity Fair*
factors" used in this Circuit to determine whether the Lanham Act
can be applied extraterritorially on particular facts. *See Vanity
Fair Mills, Inc. v. T. Eaton Co.*, 234 F.2d 633, 642 (2d Cir. 1956).
But even if the Court were to reach the *Vanity Fair* factors, the
result would be the same in the instant case.

infringement and unfair competition claims, because the Court "di[d] not think it the province of United States district courts to determine the validity of trade-marks which officials of foreign countries have seen fit to grant," *id.* at 647. The Court of Appeals explained:

> To do so would be to welcome conflicts with the administrative and judicial officers of the Dominion of Canada. We realize that a court of equity having personal jurisdiction over a party has power to enjoin him from committing acts elsewhere. But this power should be exercised with great reluctance when it will be difficult to secure compliance with any resulting decree or when the exercise of such power is fraught with possibilities of discord and conflict with the authorities of another country.

*Id.* at 647.

Such considerations of international comity are squarely implicated by plaintiff's attempt here to apply United States trademark law so as to effectively cancel and transfer foreign trademark registrations. It is not surprising, therefore, that plaintiff fails to cite a single case in which a court has applied the Lanham Act to adjudicate the validity of, or ownership interest in, a foreign trademark registration.[4] Indeed, on its face, it would be grossly intrusive for a United States court to utilize the Lanham

---

[4] Plaintiff cites a case in which the district court held that Japanese defendants did not have protectable trademark rights under *Japanese* law, but that was on the basis of unrebutted export testimony as to Japanese law and the undisputed fact that defendants did not hold registrations in Japan on the marks at issue. *See Les Ballets Trockadero de Monte Carlo, Inc. v. Trevino*, 945 F. Supp. 563, 567 (S.D.N.Y. 1996). *Les Ballets* did not involve the application of a Lanham Act doctrine to determine the validity or ownership of foreign marks.

Act to declare trademarks registered by a foreign government under foreign law abandoned and owned by some other entity. Accordingly, the Court concludes that plaintiff has failed to state a claim under the Lanham Act.

Plaintiff's arguments to the contrary are unavailing. Plaintiff asserts that "it would be entirely nonsensical for the Lanham Act to apply extraterritorially to the issue of infringement but not [to the issue of] whether a party possesses a valid trademark . . . because the question of whether a party possesses valid trademark rights is an essential element of an infringement claim." Mem. of Law in Opp. to Def.'s Mot. to Dismiss at 12, ECF No. 20. But even assuming *arguendo* that the Lanham Act provides, under certain circumstances, a right of action to sue for extraterritorial infringement of *foreign* trademarks that have acquired some protection under the Lanham Act,[5] granting the holder of a foreign trademark a remedy under the Lanham Act for infringement is not remotely comparable to applying the Lanham Act so as to enable another party to strip that holder of that mark: it does not

---

[5] *But see ITC Ltd. v. Punchgini, Inc.*, 482 F.3d 135, 156 (2d Cir. 2007) ("[A]bsent some use of its mark in the United States, a foreign mark holder generally may not assert priority rights under federal law, even if a United States competitor has knowingly appropriated that mark for his own use."); *see also Buti v. Perosa, S.R.L.*, 139 F.3d 98, 103 (2d Cir. 1998) (noting that "[defendant's] registration and use of the [mark] in Italy has not, given the territorial nature of trademark rights, secured it any rights in the [mark] under the Lanham Act"); *La Societe Anonyme des Parfums le Galion v. Jean Patou, Inc.*, 495 F.2d 1265, 1270 n.4 (2d Cir. 1974) ("It is well settled that foreign use is ineffectual to create trademark rights in the United States.").

implicate the critical international comity concerns that animate the U.S. principle that a foreign trademark is a creature of foreign law. *See Topps Co.*, 526 F.3d at 70.

Plaintiff also claims that a related action that Del Monte has brought against plaintiff is premised on the notion that the Lanham Act applies to the Marks, pointing to Del Monte's allegation in that suit that certain uses of the Marks by Fresh in "the United Arab Emirates and Saudi Arabia . . . violate[] the Lanham Act." Complaint ¶ 5, *Del Monte Foods, Inc. v. Fresh Del Monte Produce Inc., et al.*, 15-cv-7216 (S.D.N.Y.), ECF No. 1. Del Monte responds that it is suing Fresh for infringement where the Marks are registered in the United States, consistent with every case in which the Lanham Act has been applied extraterritorially. In any event, plaintiff does not make a formal estoppel argument, and "inconsistent pleadings are not only permitted but are so common as not to require a citation of supporting authority." *Texwood Ltd. v. Gerber*, 1985 WL 196, at *4 (S.D.N.Y. Jan. 16, 1985); *see also McAnaney v. Astoria Fin. Corp.*, 665 F. Supp. 2d 132, 150 n.18 (E.D.N.Y. 2009) ("It is well-accepted that litigants may present conflicting alternative arguments, and it is often a sign of effective advocacy."). Moreover, Del Monte is not seeking in the related action to apply the Lanham Act to *extinguish* foreign trademark rights, so Del Monte's position is not in fact inconsistent as to the critical issue at bar.

For the foregoing reasons, the Court, in its order dated November 3, 2015, granted defendant's motion to dismiss.

Accordingly, the Clerk of the Court is hereby directed to enter

final judgment dismissing the Complaint and to close this case.

    SO ORDERED.

Dated:    New York, NY
          January 31, 2016

                                    JED S. RAKOFF, U.S.D.J.